[Cite as *Anderson v. Dept. of Rehab. & Corr.*, 2019-Ohio-3266.]

| | |
|---|---|
| LAREY CHARLES ANDERSON | Case No. 2018-00469JD |
| Plaintiff | Magistrate Robert Van Schoyck |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant at the Allen-Oakwood Correctional Institution (AOCI), brings this action for negligence arising from an accident in which he slipped and fell on a walkway at AOCI on December 17, 2016. The case proceeded to trial before the undersigned magistrate.

{¶2} At trial, plaintiff testified that the accident occurred as he was leaving the chow hall after dinner. Plaintiff stated that just after exiting the chow hall he proceeded to a blacktop walkway that led to his housing unit. According to plaintiff, the walkway was icy and caused him to slip and fall, coming down on his shin and then landing on his right side. Plaintiff related that he has spent nine years at AOCI and in his experience inmate work crews typically salt the walkways, but there was no salt at all in the area where he fell. Plaintiff stated that this was his only visit to the chow hall that day, as he usually only eats dinner there.

{¶3} Plaintiff testified that a Lieutenant Sanders was standing nearby and said he had called the captain earlier asking for salt to be spread on the walkways but that the captain declined. Plaintiff stated that medical personnel came and helped him up, but that he did not get any meaningful medical attention for three days, until being sent out to St. Rita's Medical Center in Lima for x-rays, which were negative. Plaintiff explained that the fall resulted in injuries to his back and hip and exacerbated preexisting issues with his back for which he had previously undergone surgery and had rods installed.

Plaintiff recalled initially being told to take Tylenol for pain relief, and later getting a temporary prescription for opioid medication. Plaintiff testified that he cannot sit or stand for long periods of time now, and that he attributes this to the accident. Plaintiff wanted to undergo an MRI but was not permitted to do so, he stated, and in general he expressed dissatisfaction with the medical attention he has received.

{¶4} Inmate John Matthews testified that he was leaving the chow hall around the same time as plaintiff when he observed plaintiff fall on the blacktop walkway. From Matthews' recollection, the ground was wet and icy at the time. Matthews stated that he has first-aid training through the American Red Cross and tries to assist inmates when they fall. Matthews also recalled Lieutenant Sanders summoning assistance from the medical department. According to Matthews, Lieutenant Sanders said something about how the captain wanted to close the yard to treat the walkways.

{¶5} Captain Donald Bowman testified that he serves as the shift commander for the first shift at AOCI, working from 5:00 a.m. to 1:00 p.m. Captain Bowman stated that he typically does not work during second shift, which is when plaintiff's accident occurred. Part of his responsibilities, Captain Bowman stated, is deciding when to treat walkways for snow and ice. Captain Bowman explained that around the time of the accident AOCI was transitioning from having inmates perform that work to having the maintenance staff do so. When deciding whether to have the walkways treated, Captain Bowman stated, he takes into account the maintenance staff available to him, but he has the ability to call them in to work if they are off duty. If a lieutenant asks him to have salt put down, Captain Bowman stated, he does so, as the safety of the inmates and staff who use the various walkways at AOCI is a priority. As Captain Bowman explained, he usually sends crews out when there is somewhere between a quarter and a half inch of snow, and once the snow has been plowed with a tractor the blacktop walkways are treated with rock salt, while concrete walkways are treated with a calcium product.

{¶6} John Landen, Building Construction Superintendent, testified that at the time of the accident he served as a vocational teacher at AOCI. At that time, Landen recalled, the shift commander would dispatch crews of inmates to use tractors for plowing snow and spreading salt on blacktop walkways or a calcium product on concrete. Landen stated that he is not aware of any log in existence today that would show when inmate work crews were dispatched in December 2016.

{¶7} Nurse Practitioner Dave Caudill testified that he has seen plaintiff for appointments several times. Caudill testified that he is aware plaintiff has lumbago, which is chronic low back pain that can be caused by natural degeneration or other causes, and that he has prescribed pain relief medication for plaintiff's lumbago in the past. Caudill stated that he ordered x-rays for plaintiff in August 2018, which showed no changes compared to previous x-rays and the preexisting hardware in plaintiff's back was shown to be intact, with no loosening or dislocations. Caudill was able to see in plaintiff's medical chart where plaintiff had requested an MRI at one point but through defendant's collegial review process it was determined that an alternative plan of care involving stretching and range of motion exercises was more appropriate.

{¶8} Steve Kuhlman, RN, who is the Quality Assurance Coordinator at AOCI, testified in general that he has seen plaintiff before and heard him complain of back issues, but his testimony largely pertained to explaining plaintiff's medical records. Kuhlman discussed a December 17, 2016 progress note that was made by the nurse who responded to Lieutenant Sanders' request for assistance, giving her observations of plaintiff, who reported falling on his hip but was not in any distress and denied any pain. (Defendant's Exhibit B.) The nurse reported keeping plaintiff briefly for observation but that at 6:35 p.m. plaintiff reportedly felt better and was ready to return to his housing unit, so he was released. (Id.) Another nurse made a progress note three days later, on December 20, 2016, at which time plaintiff complained of having groin pain, and he was then sent to St. Rita's Medical Center for x-rays. (Defendant's

Exhibits B & C.)  Kuhlman authenticated defendant's copies of the emergency room report and imaging report from St. Rita's Medical Center, which were negative for any fractures.  (Defendant's Exhibits D & E.)  Records indicate that when plaintiff returned to AOCI, he was kept in the infirmary briefly and examined by a physician and then was prescribed a ten-day supply of the pain reliever Ultram, Kuhlman testified.  (Defendant's Exhibit F.)  Kuhlman also gave testimony explaining a few other subsequent medical records.  (Defendant's Exhibits G-J.)

{¶9} Allison Gibson, Institutional Inspector at AOCI, testified that her responsibilities include overseeing the inmate grievance process and that she recalls looking into a grievance that plaintiff filed about the accident.  As part of her review, Gibson stated, she watched 10 to 15 minutes of video surveillance footage showing the area in front of the chow hall.  Gibson described seeing plaintiff on the video slip and fall after exiting the building, a couple of inmates helped him up, he stood on his own, Lieutenant Sanders approached and used his radio, and then a nurse came with a cart and transported plaintiff to the infirmary.  Gibson stated that her review also included looking at log books from the various inmate housing units, from which she determined that inmates from two units were sent out to perform snow and ice removal duties for approximately two hours early on the morning of December 17, 2016.  Gibson explained that the log books kept in the housing units would not necessarily reflect if inmates left to perform such work after the first inmate count of the day around 6:00 a.m., as inmates have more liberty to move around the compound during daytime hours.  Gibson stated that she is not aware of the maintenance department keeping a log of when its employees perform snow and ice removal.  Gibson stated that her review of video surveillance footage was limited to the time around plaintiff's fall, so she did not go back and look for footage of anyone treating the walkways earlier.  Plaintiff's housing unit was one of the last to go to the chow hall for dinner that day, according to her review of log

books.  Gibson described how she obtained a weather report for the city of Lima, where AOCI is located, for the date of the accident.  (Defendant's Exhibit A.)

{¶10} Warden's Assistant Joanna Factor explained what her job responsibilities are and that she has no personal knowledge about the accident.  Foster testified, however, that one of the employees who reports to her, Ken Myers, is responsible for ensuring compliance with safety standards and that together they reviewed incident reports from the day of plaintiff's accident and found no reports of anyone else having a similar accident that day.

{¶11} Major Carl Bendross testified that he is the head of security at AOCI and that the only involvement he had in this matter was responding to an informal complaint that plaintiff submitted after the accident.

{¶12} Deputy Warden of Special Services Cori Smith answered plaintiff's questions about what her responsibilities are and how incident reports are routed to prison administrators, but she apparently had no involvement in this matter.

{¶13} "In a claim predicated on negligence, plaintiff bears the burden of proving by a preponderance of the evidence that defendant breached a duty owed to him and that this breach proximately caused the injury."  *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 744, 721 N.E.2d 143 (10th Dist.1998).  "Typically under Ohio law, premises liability is dependent upon the injured person's status as an invitee, licensee, or a trespasser. * * * However, with respect to custodial relationships between the state and its inmates, the state has a duty to exercise reasonable care to prevent prisoners in its custody from being injured by dangerous conditions about which the state knows or should know."  *Cordell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 08AP-749, 2009-Ohio-1555, ¶ 6, citing *Dean v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 97API12-1614, 1998 Ohio App. LEXIS 4451 (Sept. 24, 1998).

{¶14} "Although the state is not an insurer of the safety of its prisoners, once the state becomes aware of a dangerous condition in the prison, it is required to take the

reasonable care necessary to make certain that the prisoner is not injured." *Barnett v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1186, 2010-Ohio-4737, ¶ 23. It is plaintiff's burden to show that defendant had notice of the condition of the walkway when he fell. *See Powers v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 03AP-504, 2003-Ohio-6566, ¶ 10, citing *Presley v. Norwood*, 36 Ohio St.2d 29, 31, 303 N.E.2d 81 (1973); *Manross v. Ohio Dept. of Rehab. & Corr.*, 62 Ohio Misc.2d 273, 275, 598 N.E.2d 226 (Ct. of Cl.1991). "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9. "Actual notice is notice obtained by actual communication to a party." *Barnett* at ¶ 23. "Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14.

{¶15} Upon review, the magistrate finds that the evidence presented at trial fails to establish that defendant breached its duty of reasonable care. Based on the weather data admitted into evidence, early in the morning on the day of the accident temperatures were below freezing and there was some light freezing rain and snow. Prison authorities consequently had a crew of inmates treat the walkways early that morning. By 4:53 a.m., temperatures rose above freezing and remained so until approximately 5:23 p.m., when the temperature fell to 32 degrees. It was no later than 5:40 p.m. when plaintiff fell on the walkway as he left the chow hall, based upon a nurse's progress note indicating that Lieutenant Sanders called for assistance at that time. While there had been some light rain at times during the day, by the time the temperature fell back to freezing and up through the time of plaintiff's accident conditions were noted to be misty, with no measurable precipitation.

{¶16} Following the early morning treatment of the walkways to address the overnight snow and freezing rain, there is no credible evidence of the walkways being icy or otherwise hazardous prior to plaintiff's fall. There is no evidence that anyone else slipped or fell on the walkways that day, even though plaintiff was among the last inmates to visit the chow hall for dinner and many other inmates before him had traversed the walkway in question. Although plaintiff testified that Lieutenant Sanders said he had called the captain earlier requesting that salt be spread on the walkways and that the captain declined to do so, little weight is given to this testimony. There was no testimony from Lieutenant Sanders nor the captain on duty at that time, whose identity was not established, and inmate Matthews had a different recollection of what Lieutenant Sanders said regarding the captain. Captain Bowman, who normally ends his shift a few hours before the time of the accident, also testified that his habit is to grant any such request by a lieutenant. Not a single witness at trial, be they inmates or staff, testified to having any knowledge of icy or slippery conditions on the walkways before the accident, nor is there evidence that any inmates reported such conditions to staff. The weather data, including the fact that the temperature only reached the freezing point a short time before the accident, tends to suggest that the slippery condition that caused plaintiff's fall developed in close proximity to the time of the accident. In sum, reasonable care was exercised to treat the walkways relative to the overnight snow and freezing rain, and the evidence does not establish that defendant had actual or constructive notice of the slippery condition that apparently developed many hours later and caused plaintiff to fall.

{¶17} Finally, while it is noted that plaintiff does not feel he received appropriate medical attention following the accident, this case was not brought as a medical negligence claim, nor did plaintiff present the expert testimony necessary to sustain such claims. *See Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976).

{¶18} Based on the foregoing, the magistrate finds that plaintiff failed to prove his claim by a preponderance of the evidence.  Accordingly, judgment is recommended in favor of defendant.

{¶19} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT VAN SCHOYCK
Magistrate

Filed July 15, 2019
Sent to S.C. Reporter 8/15/19